# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH FERRARI, as Administrator of the Estate of CHRISTINE FERRARI; LEOVA JENKINS, as Administrator of the Estate of ELOISE BROOKS; IRASEMA RIVERA, as Administrator of the Estate of PAUL RIVERA; JOSE MONGE, as Administrator of the Estate of BLANCA NIEVES, STACIE DRUCKMAN, as Administrator of the Estate of ARTHUR DRUCKMAN; DELORIS PEOPLES, as Proposed Administrator of the Estate of ALEX PEOPLES; SANDRA THOMAS-WATSON, as Administrator of the Estate of BELINDA THOMAS; and PATRICIA BIONDI, as Executor of the Estate of MICHAEL BIONDI, for themselves and on behalf of all others similarly situated, | Civil Action No. 1:23-cv-07715-KPF |
| Plaintiffs, | |
| v. | |
| ANDREW M. CUOMO, HOWARD A. ZUCKER, M.D., MELISSA DEROSA, JOHN DOES and JANE DOES 1-30, | |
| Defendants. | |

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT MELISSA DEROSA'S MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

Of Counsel and on the Brief for Defendant Melissa DeRosa:

Gregory Morvillo, Esq.
**MORVILLO PLLC**
1740 Broadway
New York, New York 10019
Telephone: 646.831.1531
gm@morvillopllc.com

Sarah A. Sulkowski, Esq.
**GELBER & SANTILLO PLLC**
52 Duane Street, 7th Floor
New York, New York 10007
Telephone: 212.227.4743
ssulkowski@gelbersantillo.com

Anthony M. Gruppuso, Esq.
**GRUPPUSO LEGAL**
560 Main Street
Chatham, New Jersey 07928
Telephone: 973.433.9100
gruppuso.legal@outlook.com

**Table of Contents**

PRELIMINARY STATEMENT............................................................................................1

ARGUMENT...................................................................................................................2

I. COUNT I SHOULD BE DISMISSED FOR FAILURE TO STATE A SECTION 1983 CLAIM AGAINST MS. DEROSA.................................................................................2

A. Plaintiffs Effectively Concede Their Failure To Pled Ms. DeRosa's Personal Involvement In Any Deprivation Of Decedents' Federal Or Constitutional Rights...................................................................................................................2

B. Plaintiffs Fail To Plead A Claim Under The "State-Created Danger" Doctrine.................................................................................................................4

C. Plaintiffs Have Not Stated A Section 1983 Claim Against Ms. DeRosa Based On The "Special Relationship" Doctrine...................................................7

D. Plaintiffs Concede That They Have Not Alleged A FNHRA Cause of Action...................................................................................................................7

II. PLAINTIFFS CONCEDE THAT THEY HAVE NOT ALLEDGED FACTS STATING A SECTION 1983 CONSPIRACY CLAIM AGAINST MS. DEROSA.............8

III. MS. DEROSA IS ENTITLED TO QUALIFIED IMMUNITY.......................................9

IV. PLAINTIFFS CONCEDE THAT THEIR STATE-LAW CLAIMS DO NOT STATE CLAIMS FOR RELIEF AND SHOULD BE DISMISSED...................................10

V. PLAINTIFFS CONCEDE THAT THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER COUNTS II, III, IV, V, AND VI, AND THE COURT SHOULD THEREFORE DISMISS THEM UPON DISMISSAL OF PLAINTIFFS' SECTION 1983 CLAIM.......................................................10

CONCLUSION...............................................................................................................10

## Table of Authorities

**Cases:**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................................2

*Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001) ........................................................2

*Brown v. City of N.Y.*, 786 F. App'x 289 (2d Cir. 2019) ................................................................5

*Chambers v. N. Rockland Cent. Sch. Dist.*, 815 F. Supp. 2d 753 (S.D.N.Y. 2011) ......................5

*Ciambriello v. Cty. of Nassau*, 292 F.3d 307 (2d Cir. 2002) ..........................................................8

*Curley v. Vill. of Suffern*, 268 F.3d 65 (2d Cir. 2001) ...................................................................8

*Estelle v. Gamble*, 429 U.S. 97 (1976) ...........................................................................................7

*Farid v. Ellen*, 593 F.3d 233 (2d Cir. 2010) ...................................................................................2

*Farrell v. Burke*, 449 F.3d 470 (2d Cir. 2006) ...............................................................................2

*In re Bausch & Lomb Inc. ERISA Litig.*, No. 06-CV-6297, 2008 WL 5234281
(W.D.N.Y. Dec. 12, 2008) ...............................................................................................................6

*Lombardi v. Whitman*, 485 F.3d 73 (2d Cir. 2007) ...............................................................5, 6, 9

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204 (S.D.N.Y. 2007) ................4

*Matican v. City of New York*, 524 F.3d 151 (2d Cir. 2008) ............................................................5

*Mauro v. Cuomo*, No. 21-CV-1165 (HG) (ARL), 2023 U.S. Dist. LEXIS 38964
(E.D.N.Y. Mar. 8, 2023) ..........................................................................................................6, 9, 10

*N.Y. State Corr. Officers & Police Benevolent Ass'n v. Hochul*, 607 F. Supp. 3d 231
(N.D.N.Y. 2022) ...............................................................................................................................6

*Okin v. Vill. of Cornwall–On–Hudson Police Dep't,* 577 F.3d 415 (2d Cir. 2009) .........................5

*Pena v. Deprisco*, 432 F.3d 98 (2d Cir. 2005) ...............................................................................9

*Reid v. City of New York*, No. 20-CV-644, 2012 U.S. Dist. LEXIS 148343 (S.D.N.Y. Aug. 6, 2021) ....2

*Saucier v. Katz*, 533 U.S. 194 (2001) .............................................................................................9

*Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020) ....................................................................2,3

*Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308 (2007) ........................................................6

*Victory v. Pataki*, 814 F.3d 47 (2d Cir. 2016) ...............................................................................3

*Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004) ..........................................................................2

*Youngberg v. Romeo*, 457 U.S. 307 (1982) .....................................................................................7

## <u>PRELIMINARY STATEMENT</u>

After two Complaints and an opposition to this Motion, Ms. DeRosa is still waiting for Plaintiffs to allege and identify a single well-pled fact connecting her to either the March 25th Advisory or the unfortunate deaths of Plaintiffs' family members. The only thing that has changed from Plaintiffs' initial Complaint is that they now make a lame effort to justify their false claim that Ms. DeRosa was "at the top" of the March 25th Advisory, by inexplicably asserting that Defendants and the Court misread or misunderstood the language to mean that Ms. DeRosa's name appeared, in fact, "at the top" of the March 25th Advisory. Now, Plaintiffs suggest they meant something entirely different—that Ms. DeRosa was a significant participant in the creation of the March 25th Advisory. However Plaintiffs spin it, the assertion is false, and the Court should reject their tortured reimagination of their allegation. The only other allegation against Ms. DeRosa comes from her book, in which she states that she was a senior official in state government during the pandemic—but unassailable Second Circuit law prohibits Section 1983 liability merely for being a supervisor. Plaintiffs have now had three bites at the apple, and yet their allegations fail to connect Ms. DeRosa in any way to the alleged conduct at issue. Ms. DeRosa respectfully requests that this Court dismiss Plaintiffs' case against her.

## ARGUMENT[1]

I.    **COUNT I SHOULD BE DISMISSED FOR FAILURE TO STATE A SECTION 1983 CLAIM AGAINST MS. DEROSA.**

   ### A. Plaintiffs Effectively Concede Their Failure To Plead Ms. DeRosa's Personal Involvement In Any Deprivation Of Decedents' Federal Or Constitutional Rights.

   Plaintiffs' opposition to Ms. DeRosa's Motion to Dismiss (the "Motion")[2] confirms, rather than refutes, that the AC fails to state a claim against Ms. DeRosa under controlling law.

   It is axiomatic that without well-pled factual allegations establishing Ms. DeRosa's personal involvement, Plaintiffs cannot state a Section 1983 claim against her. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010); *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir. 2006). The law provides "no special rule for supervisory liability"; rather, as Plaintiffs concede, "'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 616, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). *See also* Opp. at 32. Indeed, Plaintiffs acknowledge that "'[t]he [Section 1983] violation must be established against the supervisory official <u>directly</u>.'" Opp. at 32 (emphasis added) (quoting *Reid v. City of New York*, No. 20-CV-644, 2012 U.S. Dist. LEXIS 148343, at *53 (S.D.N.Y. Aug. 6, 2021)). And yet Plaintiffs nonetheless attempt to rely solely upon conclusory group allegations against "Defendants"[3]—in defiance of the *Tangreti/Iqbal* rule.[4]

   None of Plaintiffs' generic allegations against "Defendants" shows that Ms. DeRosa was personally involved in any aspect of the March 25th Advisory. When those blanket assertions are

---

[1] Ms. DeRosa incorporates the reply arguments made in the briefs submitted by her co-defendants in further support of their respective motions to dismiss the Amended Complaint, to the extent those arguments are applicable to the claims and allegations asserted against her and not captured by her arguments set forth below.

[2] Capitalized terms not defined herein have the meaning ascribed in Ms. DeRosa's moving brief.

[3] *See, e.g.*, Opp. at 33-34.

[4] Plaintiffs' citation to *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004), is inapplicable. *See* Opp. at 6-7. *Wynder* observes that <u>claims</u> need not be asserted on a defendant-by-defendant basis in a multi-defendant case—but *Wynder* does <u>not</u> excuse a Section 1983 plaintiff from setting forth well-pled facts against <u>each</u> defendant. Group pleading is <u>not</u> permissible. *See, e.g.*, *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001).

properly stripped away, Plaintiffs' entire case against Ms. DeRosa rests, not on any affirmative conduct attributed to Ms. DeRosa as the law indisputably requires, but rather merely upon (i) Ms. DeRosa's supervisory position in the Executive Chamber and (ii) an allegation—which Plaintiffs concede is false but disingenuously try to change the plain meaning of—that Ms. DeRosa is "at the top" of the March 25th Advisory. Both allegations are insufficient as a matter of law.

First, Plaintiffs rely on a quote from Ms. DeRosa's book, in which she describes herself as "'the most senior member'" of Governor Cuomo's "'team'" during the pandemic. Opp. at 35. Notably, this statement has nothing to do with nursing homes or the March 25th Advisory—it is merely a description of her then-job. As such, Plaintiffs' reliance on this quote is plainly an impermissible effort to seek liability based upon Ms. DeRosa's supervisory position. *See Tangreti*, 983 F.3d at 618; *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016), *as amended* (Feb. 24, 2016).

Next, Plaintiffs proceed to triple down on their assertion that Ms. DeRosa is "at the top of" the March 25th Advisory—even though they admit in their brief, as they did to the Court during the pre-motion conference, that Ms. DeRosa's name is not on the document. Opp. at 33 & n.8. But rather than withdraw their false allegation, as the Court instructed them to do, Plaintiffs retained it in the AC and now contend that "[a]lthough unartfully [sic] pleaded, this allegation clearly means that [Ms. DeRosa was an] active and principal participant[] in the creation of the March 25th [Advisory]." *Id.*

To the contrary, the allegation plainly means—as Plaintiffs' counsel admitted to the Court during the conference[5]—that Ms. DeRosa's name is on the Advisory (and "at the top" of it, no less). Contrary to Plaintiffs' semantic gymnastics, the language in the AC is unambiguous. If Plaintiffs wanted to allege that Ms. DeRosa was an "active and principal participant in the creation of the March 25th Advisory," they easily could have made that allegation—and just that allegation. But they did not.

---

[5] Morvillo Decl., *Exhibit D*, Tr. of Status Conference Hearing held Jan. 18, 2024, at 17:25-18:1.

Instead, they alleged that her name is "at the top" of the document, which it is not. The allegation, and Plaintiffs' new spin, are both false, plain and simple, and should be rejected out of hand.

Moreover, even if the allegation were re-written as Plaintiffs suggest, *i.e.*, to state that Ms. DeRosa was an "active and principal participant in the creation of the March 25th Advisory," it would <u>not</u> be a well-pled factual allegation, because it is wholly conclusory. In sum, Plaintiffs do not point to a single well-pled factual allegation in the AC that could show Ms. DeRosa's personal involvement in any aspect of the March 25th Advisory. Indeed, for purposes of this Motion, only the following must be presumed to be true as regards Ms. DeRosa: (1) she served as Secretary to the Governor from 2017 to 2021; (2) she described herself in her book as "the most senior member" of Governor Cuomo's team during pandemic; and (3) the team was aware of the danger that COVID posed to nursing home residents.[6] AC ¶¶ 63, 65. Those facts cannot support a Section 1983 claim against Ms. DeRosa.

### B.  Plaintiffs Fail To Plead A Claim Under The "State-Created Danger" Doctrine.

Ms. DeRosa's moving brief demonstrated that Plaintiffs have failed to plead facts establishing any of the three fundamental elements of a Section 1983 state-created danger claim against her. They are: (1) that each Decedent suffered an act of "private violence" at the hands of the facility in which he or she resided; (2) that <u>Ms. DeRosa</u> communicated with each facility in a way that "official[ly]

---

[6] Plaintiffs' assertions that Ms. DeRosa "admitted on a [February 11, 2021] call with state legislative members that the underreporting and withholding of nursing home COVID-19 death totals was intentional and with the purpose of misleading the public and federal authorities" (AC ¶ 142) and that she "has been reported as saying [the Cuomo administration] delayed release of complete data on COVID-19 deaths in nursing homes out of fear of an investigation from the U.S. Department of Justice" (*id.* ¶ 170) are not entitled to the presumption of truth, because they are inconsistent with the verbatim transcript of the statement in question. *See* CBS 6 News, *Transcript of Zoom Call with Cuomo's Administration and NYS Legislators* (Feb. 18, 2021), *available at* https://cbs6albany.com/news/local/transcript-of-zoom-call-with-cuomos-administration-and-nys-legislators. *See also Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007) ("At the motion to dismiss stage, where a plaintiff's factual allegations or legal conclusions are flatly contradicted by documentary evidence, they are not presumed to be true, or even accorded favorable inference . . . .") (cleaned up).

sanction[ed] … private violence" against the Decedents; and (3) that <u>Ms. DeRosa's</u> conduct shocks the conscience.[7]  Plaintiffs do not challenge these required elements.

Nor, however, can Plaintiffs point to a single well-pled factual allegation against Ms. DeRosa that could establish any of those elements. The AC alleges no facts showing that the facilities violently harmed the Decedents or that Ms. DeRosa communicated with the facilities in a manner that "official[ly] sanction[ed]" any such acts of "private violence."[8] Nor does the AC set forth any facts showing that <u>Ms. DeRosa personally</u> acted in a conscience-shocking manner. *See Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007).[9]

Faced with these undeniable infirmities in their pleading, Plaintiffs attempt to fall back on a statement in Ms. DeRosa's book concerning the dangers—well-known by all at the time—that COVID posed to nursing-home residents. Opp. at 38 (citing AC ¶ 65). But that statement does not refer to the March 25th Advisory, much less show Ms. DeRosa's knowledge or personal involvement in its creation or effectuation, or that she committed any act that affected the Decedents.[10]

Plaintiffs also vaguely suggest that the availability of the Javits Convention Center and the *U.S.S. Comfort* as potential facilities for the treatment of COVID-infected individuals during the

---

[7] Mov. Br. at 13 (citing *Brown v. City of N.Y.*, 786 F. App'x 289, 292 (2d Cir. 2019); *Okin v. Vill. of Cornwall–On–Hudson Police Dep't,* 577 F.3d 415, 428 (2d Cir. 2009); *Matican v. City of New York,* 524 F.3d 151, 154–55 (2d Cir. 2008); *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007)).

[8] *See Chambers v. N. Rockland Cent. Sch. Dist.*, 815 F. Supp. 2d 753, 769 (S.D.N.Y. 2011) (state-created danger only applicable where government defendant "is a substantial cause of the danger or at least enhance[s] it in a material way" (internal alteration and quotation marks omitted)).

[9] Plaintiffs' attempt to distinguish *Lombardi* fails. They suggest that the *Lombardi* plaintiffs alleged <u>only</u> that the "defendants had an affirmative duty to prevent them from suffering exposure to environmental contaminants" and that Plaintiffs allege no such affirmative duty here. Opp. at 37. But the plaintiffs in *Lombardi* also alleged that the defendants' conduct had "creat[ed] a danger where otherwise one would not have existed," which consequently increased their risk of exposure to the subject environmental contaminants. 485 F.3d at 79. Here, Plaintiffs likewise allege that "Defendants' actions … increased the danger and harm to [the Decedents], including their exposure to [COVID-19]." Opp. at 37. *Lombardi* thus applies.

[10] In addition, Plaintiffs fail to plead any facts establishing how or from whom any Decedent may have contracted COVID. In fact, the AC does not allege that any Decedent ever interacted with any COVID-infected person at any time, at any place. Nor does the AC plead that the admission of a COVID-positive individual pursuant to the March 25th Advisory—rather than a staff member or other person—caused Decedents to contract COVID.

pandemic somehow saves their Section 1983 claim against Ms. DeRosa from dismissal.[11] But Plaintiffs do not dispute that the March 25th Advisory was issued at the beginning of the COVID pandemic, when DOH was indisputably faced with multiple "competing obligations" during an historic healthcare crisis. *See, e.g., Mauro v. Cuomo*, No. 21-CV-1165 (HG) (ARL), 2023 U.S. Dist. LEXIS 38964, at *20-22 (E.D.N.Y. Mar. 8, 2023). Nor do Plaintiffs challenge that when a state official is faced with the "pull of competing obligations," the official's policy decision can only shock the conscience, and thus give rise to constitutional liability, if it was made with "an intent to cause harm arbitrarily." *Lombardi*, 485 F.3d at 75.[12] The AC does not plead <u>any</u> conduct of Ms. DeRosa showing that she arbitrarily intended to harm the Decedents.

Finally, Plaintiffs' suggestion (Opp. at 5) that Ms. DeRosa should have submitted a sworn certification attesting to her "non-involvement in the design and implementation" of the March 25th Advisory is a transparent, and impermissible, attempt at burden-shifting. Ms. DeRosa bears no burden on a Rule 12(b)(6) motion to submit evidence to affirmatively rebut or disprove an allegation. Indeed, Ms. DeRosa invokes Rule 12(b)(6) to enforce <u>Plaintiffs' burden</u> to <u>plead facts</u> showing her <u>personal involvement</u>. The Court should not entertain Plaintiffs' attempt to skirt their responsibilities.

---

[11] Notably, the AC does not allege that either the Javits Center or the *Comfort* had the facilities, staff, or expertise to care for nursing-home residents with specialized healthcare needs beyond treatment for COVID. Moreover, the Court may take judicial notice of public statements by the federal government that neither the Javits Center nor the *Comfort* was initially available to COVID patients at all. *See* Department of Defense, *USNS Mercy, USNS Comfort Receiving Patients in LA, New York City* (Apr. 2, 2020), *available at* https://www.defense.gov/News/News-Stories/Article/Article/2134688/usns-mercy-usns-comfort-receiving-patients-in-la-new-york-city/; U.S. Northern Command, *Navy Hospital Ships Helping in COVID-19 Response* (Apr. 2, 2020), *available at* https://www.northcom.mil/Newsroom/News/Article/Article/2134920/navy-hospital-ships-helping-in-covid-19-response/; U.S. News, U.S. Embassy*, Remarks by President Trump in Press Briefing* (Apr. 14, 2020), *available at* https://it.usembassy.gov/remarks-by-president-trump-in-press-briefing-april-14-2020/. *See also In re Bausch & Lomb Inc. ERISA Litig.*, No. 06-CV-6297, 2008 WL 5234281, at *1 n.1 (W.D.N.Y. Dec. 12, 2008) ("A court may take judicial notice of . . . public statements by government authorities . . . .") (citing *Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308 (2007)).

[12] *See also N.Y. State Corr. Officers & Police Benevolent Ass'n v. Hochul*, 607 F. Supp. 3d 231, 243-44 (N.D.N.Y. 2022) ("The Second Circuit, recognizing a government's need to make such difficult decisions, has held that deliberately indifferent policy actions of government actors cannot shock the conscience in a constitutional sense where they seek to accommodate competing governmental interests even if the decision-making official, aware of the risks to a particular group, makes a poor choice resulting in grave consequences.").

In short, Plaintiffs' pleading is bereft of anything other than the most conclusory allegations against Ms. DeRosa pertaining to the March 25th Advisory. And even if Plaintiffs had alleged facts tying Ms. DeRosa to the March 25th Advisory—although they indisputably have not—her conduct would not shock the conscience as a matter of law. Accordingly, Count I should be dismissed.

### C. Plaintiffs Have Not Stated A Section 1983 Claim Against Ms. DeRosa Based On The "Special Relationship" Doctrine.

Plaintiffs next try to save their Section 1983 claim by baselessly arguing that Ms. DeRosa could be liable under the "special relationship" theory espoused in *Estelle v. Gamble*, 429 U.S. 97 (1976), and *Youngberg v. Romeo*, 457 U.S. 307 (1982)—a theory that appears nowhere in their AC. Those decisions held that the government has a duty to protect individuals who are involuntarily committed or incarcerated and thus wholly dependent upon the government for care. Misguidedly invoking those holdings, Plaintiffs argue that a "'special relationship' arose after the State . . . ordered a lockdown which confined these nursing home residents, many cognitively impaired and physically disabled, to their respective facilities . . . ." Opp. at 36.

However, Plaintiffs' argument is unsustainable, because the AC alleges no facts that could show that any Decedent was "confined" to any facility and held there against his or her will. Thus, the AC provides no factual basis for a finding of a "special relationship." Moreover, there is no allegation that Ms. DeRosa was personally involved in creating any such fictitious confinement or that she had any personal involvement whatsoever in the Decedents' care.

### D. Plaintiffs Concede That They Have Not Alleged A FNHRA Cause of Action.

Ms. DeRosa's moving brief established that Plaintiffs have not identified any FNHRA-protected rights that were allegedly violated. Ms. DeRosa further demonstrated that FNHRA does not provide Plaintiffs with a private cause of action against any person or entity other than a nursing home. Plaintiffs do not attempt to refute Ms. DeRosa's arguments. Their Section 1983 claim against her for allegedly violating FNHRA should be dismissed.

## II.    PLAINTIFFS CONCEDE THAT THEY HAVE NOT ALLEGED FACTS STATING A SECTION 1983 CONSPIRACY CLAIM AGAINST MS. DEROSA.

Plaintiffs acknowledge that, to state a Section 1983 conspiracy claim against Ms. DeRosa, they must plead facts plausibly showing that she (1) entered an agreement with a private party; (2) "to act in concert" with that party "to inflict an unconstitutional injury"; and (3) committed "an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). *See also* Opp. at 32. Yet Plaintiffs do not point to a single well-pled fact that could establish any of those requisite elements. Indeed, with their inexplicable triple-down on their false "at the top" allegation, and their ludicrous contention that it is Ms. DeRosa's burden to disprove her involvement with the March 25th Advisory, Plaintiffs have essentially conceded that there are no facts linking the March 25th Advisory to Ms. DeRosa. Because a Section 1983 conspiracy claim cannot be sustained without showing an underlying violation, Count I should be dismissed on that basis alone. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). Nor is there a single fact alleged in the AC that could show that Ms. DeRosa agreed and acted in concert with anyone to harm any Decedent.

Rather than point to specific facts in the AC that support each of the elements (because none exist), Plaintiffs contend that they need not plead any such facts, vaguely suggesting that the AC's allegations "raise a reasonable expectation that discovery will reveal evidence proving their [conspiracy] claim." Opp. at 10. As a matter of law, however, Plaintiffs' false "at the top" allegation and Ms. DeRosa's supervisory position in the Executive Chamber do not raise any such "reasonable expectation." The AC contains "only conclusory, vague, or general allegations that [Ms. DeRosa] engaged in a conspiracy to deprive the [Decedents] of [their] constitutional rights," which, under Second Circuit law, cannot sustain their Section 1983 conspiracy claim. *Ciambriello*, 292 F.3d at 325.

Moreover, as regards Ms. DeRosa's supposed withholding of Covid-related information from the public, Plaintiffs ignore altogether the following allegations of their own AC:

- all the Decedents but Mr. Biondi were admitted to their respective nursing homes prior to the beginning of the pandemic (*i.e.*, well before the March 25th Advisory), AC ¶¶ 6, 14, 22, 30, 34, 39, 45;

- Mr. Biondi was admitted in October 2020 to North Westchester, five months <u>after</u> a May 10th Executive Order superseded the March 25th Advisory, *id.* ¶ 51; and

- all Plaintiffs were well aware of the impact of COVID on nursing-home residents as the pandemic was unfolding, *id.* ¶¶ 81-82, 92-93, 95-96, 98-99, 102-03.

By conceding those facts, and by failing to allege that any Plaintiff relied upon any statement or omission by Ms. DeRosa in deciding to admit their loved ones to a nursing home or to keep them in one, Plaintiffs have likewise conceded that no alleged misstatement or withholding of information by Ms. DeRosa harmed any Decedent. Plaintiffs cannot state a Section 1983 claim against Ms. DeRosa.

## III.    MS. DEROSA IS ENTITLED TO QUALIFIED IMMUNITY.

Ms. DeRosa is entitled to qualified immunity for two separate reasons, each of which compels dismissal of Plaintiffs' Section 1983 claim.

First, the AC sets forth no facts showing that Ms. DeRosa knowingly violated the Decedents' substantive due process rights. *Pena v. Deprisco*, 432 F.3d 98, 107 (2d Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Plaintiffs have pled no facts showing that Ms. DeRosa (i) was personally involved in any way in the March 25th Advisory's development or issuance, (ii) engaged in any conduct that could have caused the Decedents' deaths, (iii) made any statement that led to the Decedents' admission to, or continued residence in, a nursing home, or (iv) was in any way involved with the Decedents' care. Accordingly, there is no basis in the AC to find that Ms. DeRosa was at all involved in the March 25th Advisory or that she caused any Decedent any harm, much less did so intentionally. *See Lombardi*, 485 F.3d at 75 (instructing that a state official's policy decision can only give rise to constitutional liability if it was made with "an intent to cause harm arbitrarily").

And even if Plaintiffs had pled such facts, qualified immunity would nonetheless protect Ms. DeRosa from liability. Plaintiffs do not even address *Mauro v. Cuomo*—in which Judge Gonzalez granted

Governor Cuomo and Dr. Zucker qualified immunity and dismissed Section 1983 claims arising out of the issuance of a health advisory to nursing homes less than two weeks prior to the March 25th Advisory—let alone demonstrate that Judge Gonzalez was wrong such that this Court should reject *Mauro*'s holding. This Court should follow *Mauro*, grant Ms. DeRosa qualified immunity, and dismiss the Section 1983 claim.

## IV.   PLAINTIFFS CONCEDE THAT THEIR STATE-LAW CLAIMS DO NOT STATE CLAIMS FOR RELIEF AND SHOULD BE DISMISSED.

Ms. DeRosa demonstrated in her moving brief that each of Plaintiffs' state-law claims failed to state a claim for relief and should be dismissed pursuant to Rule 12(b)(6). Plaintiffs do not oppose Ms. DeRosa's arguments. Accordingly, the Court should dismiss Counts II, III, IV, V, and VI.

## V.   PLAINTIFFS CONCEDE THAT THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER COUNTS II, III, IV, V, AND VI, AND THE COURT SHOULD THEREFORE DISMISS THEM UPON DISMISSAL OF PLAINTIFFS' SECTION 1983 CLAIM.

Ms. DeRosa's moving brief established that, should the Court dismiss Count I, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims in Counts II, III, IV, V, and VI.[13] Plaintiffs concede Ms. DeRosa's argument. Therefore, in the event the Court dismisses Count I as against Ms. DeRosa, the Court should decline to exercise jurisdiction over, and should thus dismiss, all remaining causes of action in the AC against Ms. DeRosa.

## CONCLUSION

For these reasons, and those stated in Ms. DeRosa's opening brief, the Motion should be granted in its entirety, and the Amended Complaint should be dismissed against Ms. DeRosa.

Dated: June 28, 2024                    Respectfully submitted,

**MORVILLO PLLC**          **GELBER & SANTILLO PLLC**          **GRUPPUSO LEGAL**

By: */s/ Gregory Morvillo*          By: */s/ Sarah A. Sulkowski*          By: */s/ Anthony M. Gruppuso*
  Gregory Morvillo, Esq.          Sarah Sulkowski, Esq.          Anthony M. Gruppuso, Esq.

---

[13] Those Counts purport to state causes of action under New York law for, respectively, civil-rights violations, conscious pain and suffering, wrongful death, gross negligence, and intentional infliction of emotional distress.